

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 30, 1958

Hon. Zollie Steakley
Secretary of State
Capitol Station
Austin, Texas

Opinion No. WW-440

Re: Should the Secretary of State
accept and file Articles of
Incorporation in which the cor-
porate name includes one of the
words, "discount", "rediscount",
"guaranty", or "surety", and
related questions.

Dear Mr. Steakley:

You have requested our opinion answering five questions
concerning the granting of charters to corporations under the
Business Corporation Act which contain proposed purpose clauses
and corporate names containing certain descriptive words. Your
first question is as follows:

"Should the Secretary of State accept and
file Articles of Incorporation which include one
or more of the following purposes:

"a. To endorse and guarantee promissory
notes, drafts, bills of exchange, warrants, bonds,
debentures, and other negotiable and non-negoti-
able instruments and evidences of indebtedness,
and to guarantee the payment of the principal and
interest thereon.

"b. To Guarantee any contract or under taking
between individuals, or between private corpora-
tions, or between individuals, or pirvate corpora-
tions and the State, and municipal corporations, or
counties, or between corporations and individuals.

"c. To act as surety or guarantor of the
fidelity of any person, firm or corporation ap-
pointed to or assuming the performance of any trust
arising out of a contract between individuals or
corporations, or otherwise; to act as surety or
guarantor for the performance of any contract; to
act as surety or guarantor of the debts of any cor-
poration, individual, firm, or partnership; to act
as agent for the purpose of any lawful act.

"d.  To accumulate, lend and advance money or give credit to any person, firm, or corporation, either with or without security, and on such terms as may seem expedient, and to buy, sell, discount and rediscount bonds, negotiable instruments, conditional sales contracts, and other evidences of indebtedness."

We will first discuss the validity of the following proposed purpose:

"b.  To guarantee any contract or undertaking between individuals, or between private corporations, or between individuals, or private corporations, and the State, and municipal corporations, or counties, or between corporations and individuals."

The wording of this clause is identical with the wording of one of the purposes contained in Article 7.01 of the Insurance Code, which was repealed by Chapter 388, Section 1, Acts 55th Leg., 1957, p. 1162.  Article 7.01 was part of Sub-Chapter (A), Fidelity, Guaranty and Surety Corporations, and Article 7.01 was captioned, "To Act As Surety".  Although Chapter 7 of the Insurance Code has been repealed, corporations may still be incorporated under the provisions of Chapter 8 of the Insurance Code for the purpose of engaging in this type of business.

Article 2.01A, Business Corporation Act, provides that corporations for profit may be organized under this Act for any lawful purpose or purposes, but that no corporation may adopt or be organized, or obtain authority to transact business in Texas under the Act if any one of its purposes is to operate insurance companies of every type and character that operate under the insurance laws of this State.  (Art. 2.01B(4) (d)).  Article 9.14A, Business Corporation Act, also provides that the Act shall not apply to corporations organized for the purpose of operating insurance companies of every type or character that operate under the insurance laws of Texas.

Therefore, since the purpose above set forth is to permit the corporation to issue contracts of surety or guaranty, such corporation would be operating an insurance business, and under the provisions of Article 2.01B(4) (d) and Article 9.14A, a charter could not be granted by you under the provisions of the Business Corporation Act.

Although the following purpose clause:

"c.  To act as surety or guarantor of the

fidelity of any person, firm or corporation appointed to or assuming the performance of any trust arising out of a contract between individuals or corporations, or otherwise; to act as surety or guarantor for the performance of any contract; to act as surety or guarantor of the debts of any corporation, individual, firm, or partnership; to act as agent for the purpose of any lawful act."

does not use language which is identical with certain of the purposes contained in Article 7.01 of the Insurance Code discussed above, nevertheless, the phraseology evidences the intent of the corporation to conduct its business for part of the same purposes which were formerly authorized by Article 7.01 of the Insurance Code.  The purpose, "to act as surety or guarantor of the fidelity of any person, firm, or corporation appointed to or assuming the performance of any trust arising out of a contract between individuals or corporations, or otherwise", is almost identical with one of the purposes formerly authorized under Article 7.01, which was "to act as surety and guarantor of the fidelity of employees, trustees, executors, administrators, guardians or others appointed to, or assuming the performance of any trust, public or private, under appointment of any court or tribunal, or under contract between private individuals or corporations; . . . . ."

It is clear that although the verbiage of the foregoing purpose is different from the verbiage of Article 7.01, nevertheless, the nature of the proposed businesses thereunder are identical, namely, to carry on a surety or guaranty business, which is an insurance business, and therefore, since such purpose falls within the prohibitions above described, you would not be authorized to grant a charter containing this purpose to a corporation under the provisions of the Business Corporation Act for the reasons above set forth.

The same reasoning and the same conclusions are applicable to that part of the purpose clause which reads as follows:

". . . . to act as surety or guarantor for the performance of any contract; to act as surety or guarantor of the debts of any corporation, individual, firm, or partnership; . . . ."

All of the foregoing purposes are restatements in different verbiage of purpose clauses formerly authorized by Article 7.01, and would authorize the corporation to conduct a surety or guaranty business, which is insurance business (Art. 5.13, Insurance Code), and therefore you could not issue a charter or an amendment or certificate of authority to any corporation under

the Business Corporation Act to conduct a business for such pur-
pose or purposes.

The remaining part of the purpose clause is "to act as
agent for the purpose of any lawful act". It is our opinion
that you could not issue a charter or approve an amendment
thereto, or issue a certificate of authority to any corpora-
tion under the Business Corporation Act which contains this single
purpose for the following reasons:

(a) The purpose clause, standing alone,
is violative of Article 2.01A which provides
that corporations for profit may be organized
for any lawful purpose, which purpose shall be
fully stated in the articles of incorporation.
The purpose "to act as agent for the purpose of
any lawful act" is too vague and indefinite,
since the words "for any lawful act" do not
specify the nature of the act which the agent
intends to perform. It is possible that the
acts sought to be performed might, in the opin-
ion of the officers and directors of the cor-
poration, be lawful acts, but such acts might
also be in violation of the laws of this State
if accomplished in a particular manner.

(b) Prior to the enactment of the Busi-
ness Corporation Act there were three lawful
purposes under which a corporation was permit-
ted to act as agent for another. These were,
respectively, subdivisions 49 and 108, Article
1302, V.C.S., and Article 1303b, V.C.S. Sub-
division 49, Article 1302, is in part as follows:

". . . .to act as trustee under any
lawful express trust committed to them
by contract, and as agent for the per-
formance of any lawful act."

Article 1303(b), V.C.S., uses the identical language,
but adds the restriction that such corporation will be "without
banking or insurance privileges".

Sub-division 108, Article 1302, V.C.S., provides as
follows:

"Corporations may be created to furnish
the agent upon whom process may be served, to
act as agent for receipt of communications and
notices, to establish and maintain registered

offices for corporations and other organizations, domestic or foreign, and for individuals, and for the performance of any lawful act in connection therewith; provided, however, no such corporation shall as agent carry on the business of another."

In addition to the proviso contained in sub-division 108 that "no such corporation shall, as agent, carry on the business of another", all corporations whose purpose clauses contain the purposes mentioned in sub-division 49, Article 1302, and Article 1303(b), were subject to the provisions of Section 1, Article 1524a, V.C.S., which provides that "nor shall such corporation as agent or trustee carry on the business of another," which restriction is still applicable to corporations operating under such purpose clauses. (Art. 9.15B, Business Corporation Act).

It has been the uniform departmental construction of the office of the Secretary of State over a long period of years, following the opinions of various Attorneys General, that a charter could not be granted nor a permit issued to a foreign corporation whose purpose clause contained the words, "to act as agent for the performance of any lawful act", standing alone, but that the entire purpose clauses above set forth under sub-divisions 49 and 108, Article 1302, and Article 1303(b), V.C.S., must be set forth in the charter or amendment thereto, or permit in the case of a foreign corporation.

In addition the Legislatures of Texas, over a long period of years prior to the enactment of the Business Corporation Act, have not seen fit to enlarge upon the purpose clauses above set forth which permitted a corporation to act as agent, but have continued the restrictive provisions or words of limitation set forth therein.

It is the opinion of this office that a single purpose to "act as agent for the purpose of any lawful act" is not a lawful purpose which may be contained in any charter or certificate of authority for the reason that it is too indefinite and is not fully stated so as to apprise the Secretary of State or the public at large as to the performance of what lawful act or acts the proposed corporation contemplates.

The proposed purpose clause which reads as follows:

"d. To accumulate, lend and advance money or give credit to any person, firm, or corporation, either with or without security, and on such terms as may seem expedient, and to buy, sell, discount and rediscount bonds, negotiable instruments, conditional sales contracts, and other evidences of indebtedness."

is a combination of the purpose clauses set forth in subdivision 49, Article 1302, V.C.S., and Article 1303(b), V.C.S., and is an enumeration of some of the powers granted to trust companies under Article 1513, V.C.S. It also contains some of the purposes enumerated in Article 342-301 of the Banking Code, which authorizes the incorporation of banks and trust companies, although the verbiage used in the proposed purpose clause is not identical with any of the purpose clauses above enumerated. The proposed purpose clause could be subdivided into two distinct purposes: (1) "to accumulate, lend and advance money or give credit to any person, firm, or corporation, either with or without security, and on such terms as may seem expedient, . . .", and (2) "to buy, sell, discount and rediscount bonds, negotiable instruments, conditional sales contracts, and other evidences of indebtedness."

Analyzing the first purpose, it may be reduced to the purpose of accumulating and lending money, with or without security, since the words, "advance money" or "give credit" are synonymous with the words "to lend". The fact that the money is given as a loan or an advance "with or without security" is immaterial because the ordinary business practice followed by both banks as well as individuals and corporations engaged in the business of lending money to the public is for the lender to exercise discretion as to the requirement of security, provided that such loans are not made in violation of the statutory restrictions governing the lending institution. The use of the term "and on such terms as may seem expedient" again involves a question of discretion on the part of the lender, but would not authorize the corporation to lend or advance the money in violation of the constitutional and statutory provisions governing the amount of interest and other charges to be exacted from the borrower. Standing alone, this purpose clause would not constitute a legal purpose, although it is almost identical with the provisions of sub-divisions 48 and 49, Article 1302, V.C.S., and one of the purposes contained in Article 1303(b), V.C.S., since the words "without banking and discounting privileges" would have to be added to the purpose clause before you would be authorized to issue a charter, approve an amendment, or grant a certificate of authority to a foreign corporation to engage in business in Texas for such purpose. The addition of the qualifying phrase, "without banking and discounting privileges", will be discussed in the answer to your second question.

The purpose clause authorizing the corporation "to buy, sell, discount and rediscount bonds, negotiable instruments, conditional sales contracts and other evidences of indebtedness," would be invalid as to the words "discount and rediscount" since such language is almost identical with the language in sub-division 49, Article 1302, which authorizes a corporation to "purchase,

sell, and deal in notes, bonds or securities, <u>but without banking and discounting privileges</u>", and therefore, unless such qualifying words were added, as stated above, this clause would not constitute a lawful purpose. Since the words, "discount and rediscount" are in direct contradiction to the necessary qualifying phrase, "without banking and discounting privileges", such words would, of necessity, authorize the performance of a prohibited act.

Discounting is one of the functions of the banking business. This is manifest from the wording of Section 16, Article XVI, Constitution of Texas, which authorizes "the incorporation of corporate bodies with banking and discounting privileges". The word "discount", has been held to be included in the term, "banking". <u>Kaliski v. Gossett, Banking Commissioner,</u> 109 S.W. 2d 340, 344 (Civ. App. 1937, error ref.); Attorney General's Opinion No. 0-5646, dated October 13, 1943, and No. 0-4912, dated October 17, 1942. Hence, any purpose clause which authorized a corporation to conduct a business of discounting or rediscounting negotiable instruments or commercial paper would constitute authority for the corporation to do a banking business and would fall within the prohibition of Article 2.01B(4)(a). Therefore, you would be without authority to grant a charter or amendment thereto, or certificate of authority to a foreign corporation for such purpose. It may be noted that the phrasing of the proposed purpose clause (d), <u>supra,</u> bears a striking similarity to the provisions of Article 342-301 (a) and (e), V.C.S. (Banking Code of 1943).

The last of the proposed purposes is as follows:

"a. To endorse and guarantee promissory notes, drafts, bills of exchange, warrants, bonds, debentures, and other negotiable and non-negotiable instruments and evidences of indebtedness, and to guarantee the payment of the principal and interest thereon."

It will be noted that the proposed purpose clause twice contains the words, "to guarantee". Article 5.13 of the Insurance Code is applicable to any insurance company or other organization writing any fidelity, surety, or guaranty bonds on risks or operations in Texas, with certain exceptions not applicable here, and vests the regulatory power over such organizations in the Board of Insurance Commissioners. The regulatory powers enumerated are generally concerned with ratings and policy forms. Again referring to the provisions of former Article 7.01, one of the purposes named therein was to guarantee any contract or undertaking between individuals and between private corporations, and between individuals and private corporations. The purport of the

proposed purpose clause is to generally guarantee the payment of written evidences of indebtedness, both negotiable and non-negotiable. That the written evidences of indebtedness named in the purpose clause are contracts is so well settled as to obviate the necessity of citation of authorities.

In Southern Surety Co. v. Austin, 17 S.W. 2d 774 (Comm. App. 1929), it was held that in guaranty insurance the guarantor agrees to indemnify the insured for any loss of money sustained due to the failure of the principal to act. If, on the other hand, it is contended that the contract to be issued by the proposed corporation is one of suretyship, that is, to guarantee the payment of the indebtedness to the holder of the written evidence of indebtedness upon the default of the maker, nevertheless it is a contract of insurance since the holder of the written evidence of indebtedness would rely upon the obligation of the corporation under its contract to guarantee the payment of the indebtedness upon the default of the maker.

In National Auto Service Corp. v. State, 55 S.W. 2d 209, 211 (Civ. App. 1932, error dism.), the Court of Civil Appeals stated the general rule as follows:

"Whether or not a contract is one of insurance is to be determined by its purpose, effect, contents, and import, and not necessarily by the terminology used, and even though it contains declarations to the contrary."

It is self-evident that a corporation organized for the foregoing purpose would have the authority to and could issue contracts of suretyship and guaranty in furtherance of such purpose.

It is therefore our opinion that the proposed purpose clause would authorize the corporation to issue contracts of surety and guaranty, which is an insurance business, and therefore you would be without authority to issue any charter or amendment thereto, or certificate of authority to any corporation under the provisions of the Business Corporation Act to conduct a business for such purpose.

Your second question is as follows:

"Is the Secretary of State authorized to accept and file a domestic corporate charter, or an application for a certificate of authority of a foreign corporation, contain purpose clause in terms of subdivisions 48, 49, and 50 of Article 1302, and Article 1303b, if the purposes clauses do not contain the words of limi-

tation of these statutes:  'without banking
and discounting privileges', and 'not compet-
ing with each other' in the same line of bus-
iness?"

Here the basic question is whether restrictive provi-
sions or words of limitation qualifying lawful purposes for
which a corporation could be formed under the laws of Texas
prior to the enactment of the Business Corporation Act are still
in full force and effect.

As above stated, Section 2.01A of the Business Corpora-
tion Act provides that corporations organized for profit may be
organized for any lawful purpose or purposes which must be fully
stated in the articles of incorporation.  It is a matter of com-
mon and general knowledge, of which the Courts of Texas would
take judicial notice, that under the corporation laws which ex-
isted prior to the enactment of the Business Corporation Act no
corporation for profit could be formed except for a specific
purpose named in the statutes governing the incorporation of
corporations for profit, and then the purpose for which the cor-
poration was formed was confined solely to the purpose named in
the statute.  In other words, although there were over 110 dif-
ferent statutory purposes for which corporations could be formed,
it has long been settled law in Texas that a charter could not
be granted to a corporation which contained more than one of the
statutory purposes. **Ramsey v. Tod,** 95 Tex. 404, 67 S.W. 484
(1902).

One of the legislative intents in the enactment of the
Business Corporation Act was to permit a corporation for profit
to be formed for one or more lawful pruposes, subject to the ex-
ceptions provided in Article 2.01A B.  Prior to the Act there
were many instances where a statutory purpose was enacted by the
Legislature containing a general statement that a private corpor-
ation could be formed "for any one or more of the following pur-
poses", with an enumeration thereof, and the proposed corpora-
tion could adopt the authorized purpose clause in its entirety,
or limit its purposes to one or more of the entire number of pur-
poses authorized therein.  Many of the statutory purpose clauses
were prefaced by words of limitation or restrictive provisions
upon the authority of the corporation to perform the business
authorized under the purpose within a certain sphere of activity,
so that the corporation could not do business for which corpora-
tions had been formed under other purposes which were regulated
by specific State agencies.

A typical example of such a purpose clause is to be
found in the provisions of Article 1303(b), V.C.S., which is as
follows; the restrictive provisions or words of limitation being
emphasized:

"A private corporation may be formed for
any one or more of the following purposes, <u>with-
out banking or insurance privileges</u>:   to accumu-
late and loan money; to sell and deal in notes,
bonds and securities; to act as Trustee under any
lawful express trust committed to it by contract
or will, or under appointment of any court having
jurisdiction of the subject matter, and as agent
for the performance of any lawful act; to sub-
scribe for, purchase, invest in, hold, own, assign,
pledge and otherwise deal in and dispose of shares
of capital stocks, bonds, mortgages, debentures,
notes and other securities or obligations, con-
tracts and evidences of indebtedness  of foreign
or domestic corporations <u>not competing with each
other in the same line of business</u>; to borrow
money or issue debentures for carrying out any
or all purposes above enumerated. . . . . ."

Other restrictive provisions or words of limitation are emphasized
in sub-divisions 48, 49, and 50, Article 1302, V.C.S.Subdivision
48, Article 1302, is as follows:

"To accumulate and lend money <u>without bank-
ing or discounting privileges</u>."

Sub-division 49, Article 1302, is as follows:

"For any one or more of the following pur-
poses:   To accumulate and lend money, purchase
sell and deal in notes, bonds and securities, but
<u>without banking and discounting privileges</u>: to
act as trustee under any lawful express trust
committed to them by contract and as agent for
the performance of any lawful act."

Sub-division 50, Article 1302, is as follows:

"To subscribe for, purchase, invest in,
hold, own, assign, pledge and otherwise deal in
and dispose of shares of capital stock, bonds,
mortgages, debentures, notes and other securities,
obligations, contracts and evidences of indebted-
ness of foreign or domestic corporations <u>not
competing with each other in the same line of busi-
ness</u>; provided the powers and authority herein con-
ferred shall in no way affect any provision of the
anti-trust laws of this State."

Sub-division 108, Article 1302, quoted above, contains
similar restrictive provisions or words of limitation.

As was stated in answer to your first question, the Legislature of Texas over a period of many years prior to the enactment of the Business Corporation Act has used words of limitation or restrictive provisions in connection with the statutory enactments of lawful purposes for which a corporation could be formed under the laws of Texas. Manifestly, by providing such restrictive provisions or words of limitation it was the legislative intent to limit the purposes for which a corporation might legally do business within this State so that it could not transact business which was properly being transacted by other corporations which were under strict regulatory and supervisory limitations imposed by law, and which were administered by State officers or agencies. Typical examples of such words of limitation or restriction were applicable to corporations formed for any of the purposes contained in sub-divisions 48, 49, and 50, Article 1302, V.C.S., Article 1303(b), V.C.S., and under the present Business Corporation Act, Article 1513a, V.C.S., all of which corporations were and are (Art. 9.15B, Business Corporation Act) subject to the limitations and restrictions imposed by Article 1524a, V.C.S., under the supervision of the State Banking Commissioner. Formerly all title insurance companies incorporated under former Article 1302a, V.C.S., now Chapter 9, Texas Insurance Code, were incorporated by the Secretary of State, but were under the supervision of the Board of Insurance Commissioners. Banks and trust companies which were created under the provisions of the Texas Banking Code of 1943 are under the supervision of the Banking Commissioner of Texas. Hence, any purposes contained in the general corporation laws which contain words of limitation or restrictive provisions such as, "without banking and discounting privileges", although permitting the corporation to perform certain business transactions which were common to banks and trust companies, nevertheless did not permit such corporations to engage in any phase of banking or discounting features which forms an integral part of the banking business, thereby carrying on a banking business without any supervision.

This office has held (Attorney General's Opinion No. WW-77, dated April 1, 1957), that the statutory purpose clauses authorized under the provisions of Article 1302 and sub-divisions thereof, Article 1303b, and similar statutes, have been repealed insofar as they now permit the formation of a corporation thereunder. Nevertheless, all of the purpose clauses previously enacted by the Legislature prior to the enactment of the Business Corporation Act were lawful purposes and still remain lawful purposes for which a corporation may be organized under the Act, with certain exceptions noted therein.

In enacting the Business Corporation Act the Legislature manifestly did not intend to remove the restrictive provisions or words of limitation which qualified the lawful purposes granted

by it (Art. 9.15B), but intended only that such purposes as originally enacted still constituted lawful purposes under which a corporation could be chartered for one or more lawful purposes which, under the prior law, was prohibited.

It is our opinion that you would not be authorized to grant a charter or amendment thereto to a domestic corporation, or an application for a certificate of authority to a foreign corporation which contained purpose clauses substantially the same as sub-divisions 48, 49, and 50, Article 1302, or Article 1303b, or any other similar purpose clauses which were authorized as lawful purposes prior to the enactment of the Business Corporation Act, unless such purpose clauses contained qualifying provisions or words of limitation which were originally a part thereof.

Your third question is as follows:

"Should the Secretary of State accept and file Articles of Incorporation including discounting or rediscounting purposes if words of limitation are added, to-wit: 'without banking or discounting privileges?'"

This question has been discussed and answered in the answers to your first and second questions.

Your fourth question is as follows:

"Should the Secretary of State accept and file Articles of Incorporation which include surety or guaranty purposes if words of limitation are added thereto, to-wit: 'insofar as may be permitted by law and nothing contained herein shall be construed to grant this corporation insurance powers?'"

Since we have held in answer to your first question that a purpose to do a surety or guaranty business would constitute a purpose to do an insurance business, you would not be authorized to grant a charter or an amendment thereto or a certificate of authority for a foreign corporation to do business in Texas under the provisions of the Business Corporation Act, and therefore it is immaterial whether the qualifying or restrictive phrase should be added to such purpose.

Your fifth question is as follows:

"Should the Secretary of State accept and file Articles of Incorporation in which the

corporate name includes one of the words, 'discount', 'rediscount', 'guaranty', or 'surety'?"

Article 2.05A(2) of the Business Corporation Act refers to the "Corporate Name" as follows:

"It shall not contain any word or phrase which indicates or implies that it is organized for any purpose other than the one or more of the purposes contained in its articles of incorporation."

Since we have held that you are without authority to grant a charter or an amendment thereto, or a certificate of authority to a foreign corporation to do a discounting, rediscounting, guaranty or surety business, the use of such words in the corporate name would be in violation of Section 2.05A(2) of the Business Corporation Act.

## SUMMARY

The Secretary of State is without authority to issue a charter or grant a certificate of authority to a foreign corporation for the purpose of doing business as a fidelity, surety, or guaranty business, which is the business of insurance, or for the purpose of doing a banking business.

Words of limitation or restrictive provisions contained in lawful statutory purpose clauses of private corporations for profit in effect prior to the enactment of the Business Corporation Act are still in full force and effect as to any lawful purpose for which a corporation may be formed under the provisions of Article 2.01A, Business Corporation Act.

A corporation may not use in its corporate name any word or phrase which is not descriptive of one of the purposes for which the corporation is formed.

CKR:wb:wc                              Very truly yours,

APPROVED:                              WILL WILSON
Opinion Committee                      Attorney General of Texas
Geo. P. Blackburn, Chairman
Mary K. Wall                           By s/C.K. Richards
Milton Richardson                          C.K. Richards
Fred Werkenthin                            Assistant
Reviewed for the Attorney General
By: W. V. Geppert